**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION**

Dr. Ludmilla Wells,

    Plaintiff,

v.

Board of Trustees of Florida Gulf
Coast University

    Defendant.
_____/

**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF-JURY TRIAL DEMANDED**

    Plaintiff, Dr. Ludmilla Wells, sues Defendant, Board of Trustees of Florida Gulf Coast University, and as grounds shows:

**Introduction**

    This is a pattern and practice of discrimination/retaliation and breach of contract action by Dr. Ludmilla Wells, a former Associate Professor in the Lutgert College of Business, at Florida Gulf Coast University (FGCU) – a ranked faculty member on a series of 3-year, 9-month written employment contracts for over twenty (20) years (since 1998), whose employer had been seeking to get rid of her for more than 3 years, and whom it denied summer teaching twice (2017 & 2018), denied a performance review in the summer of 2017, placed on an unfounded Performance Improvement Plan in August 2017, which PIP cost her a promotion to full Professor on February 19, 2018 and whom it fired without cause on October 12, 2018.FGCU took these adverse actions after, **One,** in the Summer of 2016, Dr. Aboulnasr, Associate Professor of Marketing and Department Chair, presented Dr. Wells with a contract that reflected male Associate Professor Gerald

1

Schoenfeld would be paid 6% of his earned salary and Dr. Wells was to be paid $1,000.00 for a summer course they were co-teaching, where each Professor was supposed to be paid 6% of their earned salary and previously agreed to the same. Dr. Wells reported sexism to President Martin, with initial reports to both Kathleen Naigle-Roides, Assistant Director of Employee Relations, Human Resources and Monique McKay, Ombudsman and Assistant to the President. With Ms. McKay as a witness, Dr. Martin pledged to resolve the entire matter with Dr. Wells but did not resolve it; **Two** in the fall of 2017 Dr. Wells reported to Ms. McKay that Dr. Aboulnasr denied her 2017 summer teaching assignment after telling her to lower her professional teaching standards (i.e. "dumb down" her courses) during a series of unusual e-mail notes and meetings that also included Dr. Bhargava, Professor of Finance, Associate Dean of Faculty and Administration, and Dr. Tony Barringer, Associate Provost/Associate Vice President for Academic Affairs, Dr. Wells reported this contract breach and retaliatory incident and requested that FGCU correct the matter, and they did not; **Three,** after FGCU did not pay Dr. Wells the same as her male counterpart in 2016, failed to correct the initial summer teaching denial (2017) and continued to subject Dr. Wells to additional adverse employment effects, throughout the summer of 2017 through 2018, Dr. Wells reported to Dean Beatty, Drs. Aboulnasr and Bhargava, and repeatedly to Monique McKay and Precious Gunter, Esquire, FGCU Director of Equity, Ethics, Compliance and Title IX, (verbally and in writing on April 8, 2019) what she reasonably perceived was not only breach of contract but also a sex and age discrimination harassment scenario including retaliation; **Then,** FGCU subjected Dr. Wells to ongoing reprisal thereafter, culminating in Dr. Beatty recommending non-extension of her contract to Interim Provost Llorens on

April 18, 2018.Dr. Wells filed formal discrimination charges on April 23, 2018 with the Equal Employment Opportunity Commission ("EEOC") dual-filed with the Florida Commission on Human Relations ("FCHR"). **Finally,** without warning, Dr. Khaled Aboulnasr summoned Dr. Wells to a meeting on or about September 26, 2018. FGCU's legal counsel Vee Leonard was present along with Dr. Tony Barringer. Dr. Aboulnasr surprised Dr. Wells with purported student concerns spanning two school years' directed Dr. Wells to explain/respond to the reports "on the spot", removed her from teaching that day, placing her on administrative leave, and fired her effective October 12, 2018.

### Jurisdiction and Venue

1. Subject matter jurisdiction is based on 28 U.S.C. §§ 1331 (federal question) and 1337 (amount in controversy), and 42 U.S.C. § 2000e-5(f)(3). The Court has supplemental jurisdiction to determine the state claims pursuant to 28 U.S.C. § 1367.

2. Venue is proper in the Southern District of Florida pursuant to 28 U.S.C. § 1391(b))2), because the cause of action accrued here, and the defendant is subject to personal jurisdiction.

### Parties

3. Plaintiff, female, is a natural person, who, at the time of the filing of this complaint was 64 years old (DOB:06-28-54) and for twenty years was employed by the defendants as an Associate Professor in the Lutgert College of Business. She is protected by the retaliation provisions of the Age Discrimination in Employment Act, 29 U.S.C. § 621, et. seq. ("ADEA"); Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et. seq. ("Title VII"); the Florida Civil Rights Act of

1992, Chapter 760 Fla. Stat. ("FCRA"), and the common laws of the State of Florida. because:

   a. She is female;

   b. She was 65 years old at the time of termination and older than age forty;

   c. She was subjected to adverse employment effects because of her age and sex;

   d. She complained about what she reasonably perceived to be discrimination;

   e. She was replaced by a younger female; and

   f. She filed a charge of discrimination and an amended charge of discrimination and participated in proceedings related to those charges.

4. The Defendant retaliated against the Plaintiff by failing to pay her the same as a male, denying her summer teaching twice (2017 & 2018), denying her a performance review in the summer of 2017, placing her on an unfounded Performance Improvement Plan in August 2017, having said unfounded Performance Improvement Plan cost her a promotion to full Professor on February 19, 2018, alleging she falsified her Curriculum Vitae/Promotion Portfolio, alleging she was the subject of student concerns that upon information and belief they solicited, and firing her without cause on October 12, 2018.

5. The Defendant is in breach of contract with the Plaintiff because:

   (a) She had a valid contract with the Defendant for a three-year term of time;

   (b) She suffered material breaches of that contract by the Defendant including failure to adhere to FGCU policies, failure to adhere to the collective bargaining unit provisions and termination prior to the three-year contract term;

(c) She was not afforded the good faith and fair dealing inherent in every contract; and

(d) She has been damaged.

6. The Board of Trustees of Florida Gulf Coast University, (hereinafter "FGCU") is a state university and subdivision of the state of Florida with its principal place of business in Fort Myers, Florida. During the period covered by this action, it set policies that governed plaintiff's employment, employed agents that dictated the terms and conditions of Plaintiff's employment, including but not limited to the authority to hire, promote/demote, discipline and fire the Plaintiff, and issued statements of earnings to pay wages to her.

## CONDITIONS PRECEDENT

7. Plaintiff, on or about April 23, 2018, filed a Charge of Discrimination 510-2019-02405 alleging a pattern and practice and continuing violation of age discrimination, sex discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC"), dual filed with the Florida Commission of Human Relations ("FCRA").

8. Plaintiff, on or about October 24, 2018 filed a second EEOC Charge of Discrimination 510-2018-03953 alleging retaliation after FGCU terminated her employment on October 12, 2018, dual-filed with the FCRA.

9. The Plaintiff has received a dismissal and "Notice of Right to Sue" from the EEOC date stamped as issued September 4, 2019, copies attached.

10. More than 180 days have passed since the filing of both the April 23, 2018 and October 23, 2018 discrimination charges without the EEOC or the FCHR either conciliating plaintiff's claims of discrimination and retaliation under the EEOC or

FCRA or making a finding of no-cause against her, giving plaintiff the right to bring a civil action on those claims.

11. Plaintiff demanded immediate reinstatement for the contract term, or in the alternative, payment under the contract more than once prior to initiating the instant action and was rebuffed by the defendant.

12. All conditions precedent to the bringing of this action have occurred, been performed or have been waived.

## GENERAL ALLEGATIONS

13. In on or about August 1998, FGCU hired Dr. Ludmilla Wells as an Associate Professor in the Lutgert College of Business.

14. Upon employing Dr. Wells, FGCU entered into a certain multi-year appointment for three year, successive contract for a nine month faculty position for employment commencing August 7 of the 1998 academic year through on or about May 6 of the 2001 academic year, by which FGCU agreed to pay to Dr. Wells an annual salary of $56,000.00 per year, payable in bi-weekly installments and employment benefits, such as health insurance, 401K, travel reimbursements up to a fixed amount, insurance for local travel and various discounts. See, the "Employment Contract" attached and incorporated as Exhibit A.

15. From the commencement of her employment in 1998 until 2018, FGCU renewed Dr. Wells' employment contract for successive three-year terms, without incident.

16. During the 2016-2017 academic year, Drs. Aboulnasr and Bhargava, Professor of Finance, Associate Dean of Faculty and Administration, and Acting Dean in Dr.

Robert C. Beatty's stead sent unusual E-mail notes to and conducted a series of what they emphasized were informal meetings with Dr. Wells.

17. Dr. Beatty, Business Dean, was frequently absent for medical reasons, beginning in on or about 2016, and not reporting to work at all pursuant to a medical leave throughout 2017 and for part of 2018.

18. Drs. Aboulnasr and Bhargava repeatedly advised Dr. Wells the meetings described in paragraph 16, above, did not constitute discipline and that she was not "in trouble".

19. Dr. Wells reasonably concluded that Drs. Aboulnasr and Bhargava were meeting with all of the staff – not only with Dr. Wells – to become acquainted.

20. At one point, Drs. Aboulnasr and Bhargava asked Dr. Wells whether she was experiencing any disciplinary problems in the classroom. They added that Dr. Wells should take command of her classroom and even summon security if needed.

21. Perplexed, Dr. Wells responded she had command of her classroom and there were no disciplinary problems.

22. Dr. Wells added that a small group of students did not complete their work. Dr. Aboulnasr responded by directing Dr. Wells to lower her professional teaching standards (i.e. "dumb down" her courses), which Dr. Wells opposed.

23. Drs. Aboulnasr and Bhargava demonstrated little support or regard for Dr. Wells during these meetings. Cryptically, they mentioned students allegedly presented concerns about Dr. Wells, but would not show her the supposed concerns. While puzzling because with no information she could take no action, Dr. Wells understood

FGCU policy delineates student "concerns" from "complaints". A concern does not constitute a disciplinary infraction.

24. In the summer of 2016, Dr. Wells taught a four-hour class. Food and drink were not permitted in the class. Headphones, cellular telephones, Apple watches and similar devices were not to be in use. The students worked in assigned teams for this course, a Marketing graduation requirement.

25. Given the long duration of the class and out of concern that some students must attend without having been afforded a lunch period, Dr. Wells permitted the students to bring a snack, such as chips or a protein bar, but no full meal, to the 4-hour class.

26. A young male student arrived for this class wearing headphones (against policy) and eating. Dr. Wells asked the student to remove the headphones and finish his meal outside. He ignored her.

27. Dr. Wells spoke to the student several times. He unfolded the wrapping around his meal and ate it in class-ignoring Dr. Wells all the while.

28. Dr. Wells summoned FGCU Security. She also phoned Dr. Bhargava and reported the matter in person to Dr. Judy Wynekoop, Associate Dean, Graduate Programs and Accreditations. FGCU Security removed the student from Dr. Wells' class.

29. Shortly thereafter, Dr. Bhargava returned to Dr. Wells' classroom with the offending student in tow, still wearing his earphones. The student returned to the classroom.

30. Dr. Bhargava stood in the hall and remarked to Dr. Wells that it was the last class of the session. The student observed Drs. Wells and Bhargava speaking in the hall, and exited the classroom, stopping in front of Dr. Bhargava as he left.

31. Dr. Bhargava admonished the student without conviction, stating "This is your instructor [he did not say "Professor."] You should listen to her." The student responded angrily "Tell her [Dr. Wells] not to talk to me"-and stalked off.

32. Dr. Bhargava took no remedial action.

33. FGCU took no remedial action.

34. The same student voluntarily enrolled in Dr. Wells' class again in the Fall 2016-2017, despite various other options. He continued to violate classroom rules, wearing headphones and using his cellular telephone.

35. In the Summer of 2016, Dr. Aboulnasr, Associate Professor of Marketing and Department Chair, presented Dr. Wells with a contract that reflected male Associate Professor Gerald Schoenfeld would be paid 6% of his earned salary and Dr. Wells was to be paid $1,000.00 for a summer course they were co-teaching, where each Professor was supposed to be paid 6% of their earned salary and previously agreed to the same. Dean Beatty did not respond to Dr. Wells' over this pay inequity and conducted virtually no discourse with her for on or about the next two years.

36. Dr. Wells reported Dean Beatty's ethics breach concerning the pay inequity to FGCU's Ethics Compliance Officer at the conclusion of the 2016 Summer session. Dr. Wells never received any response or resolution. Later, FGCU announced the ethics officer's position was eliminated, Ms. Gunter, Esquire would assume those duties. Ms. Gunter took no action regarding the ethics report.

37. Dr. Wells reported sexism and breach of contract to President Martin over the desperate pay issued to Associate Professor Schoenfeld, with initial reports to both Kathleen Naigle-Roides, Assistant Director of Employee Relations, Human

Resources and Monique McKay, Ombudsman and Assistant to the President. With Ms. McKay as a witness, Dr. Martin pledged to resolve the entire matter with Dr. Wells but did not resolve it.

38. In the Summer of 2017 Dr. Wells reported to Monique McKay, Dr. Barringer (filed two grievances) and Kathleen Naigle-Roides that Dr. Aboulnasr breached her contract and also retaliated against her by denying her 2017 summer teaching.

39. Dr. Wells reported the series of unusual e-mail notes and meetings Drs. Aboulnasr and Bhargava had sent her and conducted with her.

40. Dr. Wells requested that FGCU correct the matter. They did not.

41. In May 2017, Dr. Aboulnasr scheduled a meeting with Dr. Wells to administer her annual evaluation at 1:00 p.m. on May 12th.

42. Dr. Wells arrived for the meeting and was met by a distraught Dr. Aboulnasr. He presented Dr. Wells with a detailed account of a domestic dispute in which he was embroiled involving his girlfriend and son, and asked Dr. Wells if she could refer him to an attorney. He then left abruptly without completing her performance review – leaving the section evaluating her teaching skills incomplete, in contravention of Dr. Wells' employment contract.

43. Dr. Wells reasonably concluded Dr. Aboulnasr would re-schedule a time to finish her evaluation and set about completing her Professional Development Plan, an annual requirement for Professors, while waiting for her evaluation to be completed.

44. When Dr. Aboulnasr did not re-schedule Dr. Wells' evaluation meeting, she filed for an informal resolution over the incomplete performance evaluation pursuant to FGCU's Collective Bargaining Agreement, to no avail.

45. In August 2017, Dr. Aboulnasr returned from summer vacation in Egypt and summoned Dr. Wells to a meeting for the supposed purpose of completing her evaluation.

46. However, once again, Dr. Aboulnasr failed to complete Dr. Wells' evaluation, and instead advised her of his intent to place her on a Performance Improvement Plan ("PIP") without cause or foundation, in contravention of Dr. Wells' contract and University policy.

47. University policy provides that PIP may not be issued until the employee receives their completed evaluation.

48. Dr. Aboulnasr then returned to Egypt days later on an emergent basis.

49. Dr. Wells received the written PIP document after Dr. Aboulnasr had already left the Country.

50. The PIP appeared hastily prepared, as if "cut and pasted" from a form.

51. Dr. Well's title was stated incorrectly in the PIP, and the document's plan contained many tasks Dr. Wells was already performing and/or that she had already identified in her Professional Development Plan.

52. Dr. Wells had not committed any serious policy infraction or suffered any significant incident concerning conduct or teaching prior to receiving the PIP.

53. Dr. Aboulnasr provided no explanation concerning why he had not called the matters identified in the PIP to her attention prior to issuing the PIP.

54. Dr. Wells was embarrassed and offended.

55. Dr. Wells reasonably concluded the PIP was calculated to compel her to quit. She did not quit.

56. Dr. Wells was unable to conduct any discussion with Dr. Aboulnasr to oppose the PIP, as he remained in Egypt.

57. Dr. Wells spoke with Dr. Judy Wynekoop, who reviewed both the PIP and the PDP but could not remove Dr. Wells from the PIP.

58. Dr. Wells also corresponded via e-mail with Dr. Barringer, who implicitly threatened her with termination if she failed to execute the PIP.

59. Next, Dr. Wells reported the breach of contract matter involving the incomplete evaluation to Michael Martin, President, James Llorens, Provost, Ms. McKay, Dr. Barringer, Kathleen Naigle-Roides, Assistant Director of Human Resources, and Ms. Gunter. Each individual directed Dr. Wells to present her concerns to a different department, sending her in a circle with no resolution.

60. After FGCU did not correct the initial summer teaching denial and continued to subject Dr. Wells to additional adverse employment effects, throughout the summer of 2017 through 2018, Dr. Wells reported to Dean Beatty, Drs. Aboulnasr and Bhargava, and repeatedly to Monique McKay and Precious Gunter, verbally multiple times from 2018 on and in writing on April 8, 2019, what she reasonably perceived was not only breach of contract but also a sex and age discrimination harassment scenario including retaliation. They took no remedial action.

61. On February 19, 2018, FGCU denied Dr. Wells a promotion to full Professor solely because of the PIP, according to the Lutgert College of Business peer review committee, who opined she otherwise met every requirement for the promotion.

62. In the Spring of 2018, FGCU finally returned Dr. Wells' promotion portfolio to her, quite late. For the first time, it came to Dr. Wells' attention that Dr. Aboulnasr falsely claimed she lied in her promotion portfolio.

63. Dr. Aboulnasr falsely claimed Dr. Wells listed a 2006 publication in an international journal on her Curriculum Vitae. Dr. Wells had neither listed nor claimed the publication in question on her Curriculum Vitae.

64. In the summer of 2018, Dr. Aboulnasr cancelled Dr. Wells' scheduled summer teaching after Dr. Wells had fully prepared to teach the course, on three days' notice and in a manner inconsistent with FGCU policy- as a retaliatory act and in contravention of Dr. Wells' contract.

65. Dr. Aboulnasr assigned the teaching assignment to another Professor who never taught the course before and was not prepared to teach summer session.

66. Dr. Wells opposed the summer 2018 teaching cancellation to FGCU, supplying proof that Dr. Aboulnasr misrepresented the timing of his notice cancelling the teaching-to no avail.

67. On April 18, 2018, *a mere ten days after Dr. Wells submitted a written opposition to FGCU reporting discriminatory practices and breach of contract*, and in the wake of over a year of her verbal reports concerning the same, Dr. Beatty recommended non-extension of her contract to Interim Provost Llorens-a retaliatory act, breaching her contract.

68. By April 2018, Dr. Wells had entertained meetings with Ms. McKay and Ms. Gunter for months, where they pledged to resolve her discriminatory practice and breach of

contract concerns informally, only to have them propose that they would eliminate the discipline in her personnel file if she resigned. Dr. Wells did not resign.

69. Dr. Wells also pursued resolution of her breach of contract and discrimination claims with Dr. Barringer. Dr. Barringer told Dr. Wells she would receive a remedy from Ms. McKay and Ms. Gunter.

70. Ms. McKay and Ms. Gunter then offered no remedy to Dr. Wells and advised her Dr. Barringer closed her case.

71. Dr. Barringer never told Dr. Wells he closed her case.

72. Dr. Wells filed formal discrimination charges on April 23, 2018 with the Equal Employment Opportunity Commission ("EEOC") dual-filed with the Florida Commission on Human Relations ("FCHR").

73. Without warning, Dr. Khaled Aboulnasr summoned Dr. Wells to a meeting on September 26, 2018 and would not indicate the reason for the meeting. FGCU's legal counsel Vee Leonard was present along with Dr. Tony Barringer.

74. Dr. Aboulnasr surprised Dr. Wells during the meeting with purported student concerns spanning two school years.

75. FGCU directed Dr. Wells to explain/respond to the reports "on the spot", removed her from teaching that day and placed her on administrative leave.

76. Dr. Aboulnasr told Dr. Wells he did not know why he was receiving the supposed student concerns and would not respond to Dr. Wells' inquiry into whether he solicited them.

77. Dr. Aboulnasr did not explain why he never showed Dr. Wells the alleged student concerns until this meeting.

78. The supposed concerns were anonymous, but Dr. Wells could determine that at least two of them were authored by a male student who violated classroom policies and instigated disruptive behavior.

79. FGCU weaponized these supposed student concerns against Dr. Wells.

80. The purported student concerns contained untrue statements and, upon information and belief were solicited.

81. FGCU terminated Dr. Wells' employment effective October 12, 2018, breaching her contract with respect to its term, which did not expire until May 2019.

82. Dr. Wells has not been able to secure similar employment in her field, to date.

83. Dr. Wells reasonably concludes FGCU is providing her with an unfavorable reference.

84. Dr. Wells' rights have been violated and she has been damaged.

85. FGCU treated Dr. Wells, a long time highly performing employee, disadvantageously under circumstances which gave rise to an inference of unlawful discrimination, i.e., it removed her from her position on October 12, 2019-after she reported discrimination verbally and in writing and in temporal proximity to her having filed formal discrimination charges with the EEOC and FCHR.

86. Dr. Wells' opposing age and sex discrimination and her filing formal discrimination charges with the EEOC and FCHR, was also a reason that prompted FGCU to fire Dr. Wells – reprisal.

87. FGCU's termination of Dr. Wells' employment, in the midst of the term, breached her contract.

88. FGCU, through the actions alleged above, affected Dr. Wells in a "term, condition or privilege" of her employment as envisioned by the ADEA, Title VII and the FCRA.

89. FGCU's mistreatment of Dr. Wells was based on her:

    a. Age;

    b. Sex;

    c. Protected activity.

90. The violation of Dr. Wells' federally and statutorily protected right to be free of illegal discrimination constitutes irreparable harm for which Dr. Wells has no adequate remedy at law entitling Dr. Wells to injunctive relief.

### Count I: Title VII Retaliation

91. Dr. Wells realleges and incorporates the allegations of 1-4; 6-10; 12-13; 15-58; 60-86; and 85-90.

92. Title 42 U.S.C §2000e-3(a) provides, in pertinent part, that:

    It shall be an unlawful practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

93. Dr. Wells' complaints to FGCU and to the EEOC and FCHR, and her filing charges of discrimination and participation in proceedings related to her charges, were protected activities under both Title VII and the FCRA.

94. FGCU's ineffectual response to Dr. Wells' reports, including their failure to take remedial action concerning her pay and discrimination reports, all combined into a

constellation of reactions that were harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination.

95. FGCU's actions in failing to remedy Dr. Wells' situation violates his rights under Title VII and the FCRA.

96. As a direct, natural, proximate and foreseeable result of FGCU's actions, Dr. Wells has suffered emotional distress, embarrassment, inconvenience and other pecuniary and non-pecuniary damages and will continue to suffer additional losses in the future.

97. The violation of Dr. Wells' statutorily protected right to be free of unlawful discrimination constitutes irreparable harm for which Dr. Wells has no adequate remedy at law entitling Dr. Wells to injunctive relief.

98. Dr. Wells is entitled to recover reasonable attorney's fees and litigation expenses pursuant to 42 U.S.C. § 2000e-5(k).

WHEREFORE, Plaintiff, Dr. Ludmilla Wells, prays that this Court will:

*One,* issue a declaratory judgment that FGCU's practices toward Dr. Wells violated her rights against retaliation under Title VII;

*Two,* enjoin FGCU and their agents from continuing to violate Dr. Wells' statutory rights under Title VII and to make Dr. Wells whole through reinstatement, back pay and restoration of seniority and benefits, or, if that is not practical, through an award of front pay;

*Three,* enter a judgment for Dr. Wells and against FGCU for compensatory damages;

*Four*, grant Dr. Wells her costs and reasonable attorney's fees pursuant to 42 U.S.C. §2000e-5(k); and

***Five,*** grant Dr. Wells such other and further relief as the circumstances and law provide.

## Count II: FCRA Retaliation

99. Dr. Wells realleges and incorporate the allegations of 1-4; 6-10; 12-13; 15-58; 60-86; and 85-90.

100. The Florida Civil Rights Act ("FCRA") provides at § 760.10(7), FLA. STAT., as follows:

> It is an unlawful employment practice for an employer, an employment agency, a joint labor-management committee, or a labor organization to discriminate against any person because that person has opposed any practice which is an unlawful employment practice under this section, or because that person has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this section.

101. FGCU's behavior towards Dr. Wells was in retaliation for his protected activity and constituted retaliation as proscribed by § 760.10(7), FLA. STAT.

102. Dr. Wells is entitled to recover reasonable attorney's fees and litigation expenses against FGCU pursuant to § 760.11(5), FLA. STAT.

## Prayer for Relief

WHEREFORE, plaintiff, Dr. Ludmilla Wells prays this court will:

***One,*** issue a declaratory judgment that FGCU's practices toward Dr. Wells violated her rights against retaliation under the FCRA;

***Two,*** enjoin FGCU and their agents from continuing to violate Dr. Wells' statutory rights under the FCRA and to make Dr. Wells whole through reinstatement, back pay and restoration of seniority and benefits, or, if that is not practical, through an award of front pay;

***Three,*** enter a judgment for Dr. Wells and against FGCU for compensatory and

Damages;

*Four*, grant Dr. Wells her costs and reasonable attorney's fees pursuant to § 760.11(5), Fla. Stat.; and

*Five,* grant Dr. Wells such other and further relief as the circumstances and law provide.

### Count III: Breach of Contract

103. Dr. Wells realleges and incorporate the allegations of 1-3; 5-6; 11-59; 61; 64-71; 73-84; and 87.

104. Dr. Wells had a valid contract with the Defendant for a three-year term of time.

105. The Defendant materially breached Dr. Wells' contract by their failure to adhere to FGCU policies, failure to adhere to FGCU's collective bargaining agreement provisions and termination of Dr. Wells' employment seven months prior to the three-year contract term;

106. The Defendant failed to afford Dr. Wells the good faith and fair dealing inherent in every contract.

107. Dr. Wells has been damaged.

108. As a direct, natural, proximate and foreseeable result of FGCU's actions, Dr. Wells has lost wages and benefits in the past and will suffer additional losses in the future, including the income from the lost promotion and the five additional years she planned to work, having told numerous people at FGCU including peers, administrators and supervisors that she planned to work such years.

109. Dr. Wells is entitled to be awarded reasonable attorney's fees and litigation expenses pursuant to Chapter 440 Florida Statutes.

**Prayer for Relief**

WHEREFORE, Plaintiff, Dr. Ludmilla Wells, prays that this Court will:

*One,* issue a judgment that FGCU breached Dr. Wells' contract;

*Two,* enter a judgement for FGCU to make Dr. Wells whole through an award of any unpaid wages, lost wages due to a lost promotion, back pay and restoration of seniority and benefits, plus interest and reinstatement, or, if that is not practical, through an award of any unpaid wages, lost wages due to a lost promotion, back pay and front pay plus interest, including, but not limited to, pursuant to Chapter 440, Florida Statutes;

*Three,* grant Dr. Wells her costs, litigation expenses and reasonable attorney's fees against FGCU, including, but not limited to, pursuant to Chapter 440, Florida Statutes; and

*Four*, grant Dr. Wells such other and further relief as the circumstances and law provide.

**Jury Demand**

Plaintiff Dr. Ludmilla Wells, demands trial by jury on all issues so triable.

Dated: December 3, 2019                     Respectfully submitted,

<u>/s/ Geralyn F. Noonan, Esquire</u>

Geralyn F. Noonan, Esquire
P.O. Box 07338
Fort Myers, Florida 33919-0338
Phone:239-694-7070
Fax:239-481-0993
Florida Bar No.:0968020
*Attorney for Plaintiff*